UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWTECHBIO INC., | Civil Action No. 12-5882 (MAS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| SEPTICLEANSE, INC., et al. | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Newtechbio Inc.'s ("Plaintiff") renewed

motion seeking leave to file a Second Amended Verified Complaint [Docket Entry No. 60] to

redefine the RICO enterprise, add jurisdictional allegations as to Defendant Bradley A. Markin,

add four counts against Bradley A. Markin and make the nationwide service provisions of the

civil RICO statute applicable to the other individual Defendants.  Defendants Septicleanse, Inc.,

Bradley A. Markin, Robert A. Markin, Sabrina Garcia Markin, Lori Beth Kaplan Multz, Jorge

Rodriguez and Sabrigl (collectively, "Defendants") oppose Plaintiff's motion.  [*See* Docket

Entry Nos. 63 & 76].  The Court has reviewed all arguments made in support of and in

opposition to Plaintiff's motion along with Plaintiff's proposed Second Amended Verified

Complaint and its RICO Supplement to the proposed Second Amended Verified Complaint.  The

Court considers Plaintiff's motion without oral argument pursuant to L.Civ.R. 78.1(b).  For the

reasons set forth more fully below, Plaintiff's motion is DENIED.

**I.      Background and Procedural History**

Plaintiff initiated this matted on September 19, 2012 by filing a Verified Complaint (the

"Complaint") against Defendants seeking to enjoin them from selling a competing septic system

cleaning product and seeking to force Defendants to cease and desist their allegedly unfair competition practices. (*See generally* Compl.; Docket Entry No. 1).  Plaintiff markets chemicals for use in cleaning septic systems. (*Id.* ¶15).  Its primary line of septic system products is marketed under the name NT-MAX. (*Id*. ¶16).  Through its Complaint, Plaintiff alleges that Defendants, starting in June 2012, began to engage in a pattern of unfair competition when they: (1) created  fictitious consumer review websites that published derogatory reviews of Plaintiff's product, thereby negatively affecting Plaintiff's sales; and (2) purchased advertisements on various major search engines using Plaintiff's trademarks and trade names so that when consumers search for Plaintiff's products, Defendants advertisements and websites are displayed ahead of Plaintiff's. (*Id*. ¶¶ 12-14).  The websites at issue are: www.septicleanse.com, www.bestsepticproducts.com, www.septictreatments.net, www.bestseptictreatments.com, www.homesepticproducts.com, www.sewertreatment.net and www.cloggedsepticsystem.com. (*Id*. ¶23).  Plaintiff contends that all of these sites are owned and operated by Defendants with the sole purpose of disparaging Plaintiff's product and redirecting sales to Defendant Septicleanse, Inc.'s ("Septicleanse") product, Septicleanse, via the website www.septicleanse.com.

Based on Defendants' alleged conduct, Plaintiff asserted the following claims in the Complaint:  (1) participation in a Racketeer Influenced and Corrupt Organizations ("RICO") Enterprise through a Pattern of Racketeering Activity, 18 U.S.C. § 1961(5), 1962(c) (*Id*. ¶¶ 57-61); (2) Trade Libel and Unfair Competition (*Id*. ¶¶ 62-66); (3) Intentional Interference with Prospective Economic Advantage (*Id*. ¶¶ 67-73); (4) Common Law Trademark Infringement (*Id.* ¶¶ 74-78); and (5) False Advertising – Violation of 15 U.S.C. § 1125(a) (*Id* ¶¶ 79-86).  Plaintiff also requested various forms of relief including:  (1) Defendants' immediate cessation of all

websites that market septic system chemicals or purport to review such chemicals; (2) temporary and permanent injunctions barring Defendants from acquiring a business related to septic chemicals, disparaging Plaintiff's product or reviewing said product; (3) an accounting of all sales of septic system products made by Defendants after June 14, 2012; (4) Plaintiff's lost sales, trebled; (5) punitive damages; and (6) attorney's fees and post judgment fees required to collect any judgment.  (*Id*. at 27-31).

Along with the Complaint, Plaintiff also filed an application for an order to show cause for a preliminary injunction and temporary restraining order without notice (the "Application"). [Docket Entry Nos. 1 & 6].  In response to Plaintiff's Application, the District Court entered an Order to Show Cause ("OTSC"), requiring all Defendants to show cause on October 26, 2012 why they should not be enjoined from undertaking the actions outlined in the OTSC.  [Docket Entry No. 5].  Through the OTSC, the District Court also denied Plaintiff's request for an *ex parte* temporary restraining order.  (*Id*.)

The hearing on the OTSC was adjourned until November 29, 2012.  Prior to the hearing, Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim.  [Docket Entry No. 27].  The District Court heard argument on Plaintiff's application and Defendants' motion to dismiss during the scheduled OTSC hearing.

Following said argument, the District Court dismissed without prejudice all claims against the individually named Defendants, Bradley A. Markin, Robert A. Markin, Sabrina Garcia Loaiza Markin and Lori Beth Kaplan Multz.  (Order of 11/30/2012; Docket Entry No. 36).  The District Court also denied without prejudice Plaintiff's Application and set a deadline by which the parties were to complete certain limited jurisdictional discovery as to Septicleanse. (*Id*.)

Within a week of the entry of that Order, Plaintiff filed an Amended Verified Complaint (the "Amended Complaint'). [Docket Entry No. 37].  Defendants moved to strike the Amended Complaint [Docket Entry No. 41] and the District Court granted that motion, holding that Plaintiff's original Complaint remained the operative pleading.  (Order of 1/14/2013; Docket Entry No. 48).

Thereafter, the limited jurisdictional discovery as to Septicleanse concluded.  The District Court determined that it had personal jurisdiction over Septicleanse and that Plaintiff's claims as to Septicleanse would go forward.  (Memorandum Opinion & Order of 6/27/2013; Docket Entry Nos. 54 & 55).  In its Order confirming jurisdiction over Septicleanse, the District Court instructed Plaintiff to indicate within 10 days whether it would seek to have its Application for a preliminary injunction renewed.  (*Id*.)  Plaintiff withdrew its Application for a preliminary injunction.  (*See* Letter Order of 7/22/2013; Docket Entry No. 59).  It then moved to amend its Complaint.  [Docket Entry No. 60].

The Court initially terminated Plaintiff's motion to amend, finding that a RICO case management statement as outlined in Appendix O of the Local Civil Rules (the "RICO statement") would assist the Court in its determination of whether the amendments included in Plaintiff's proposed Second Amended Verified Complaint were appropriate.  (*See* Letter Order of 2/19/2014; Docket Entry No. 67).  As such, the Court instructed Plaintiff to file a RICO statement by March 21, 2014.  The Court also informed Plaintiff that after the RICO statement was filed, Plaintiff should notify the Court whether it wanted its original motion to amend reinstated or if it would prefer to file a new motion.

Plaintiff filed its RICO statement on March 20, 2014.  (Docket Entry No. 68).  It later informed the Court that it would like its original motion to amend reinstated.  The Court deemed

Plaintiff's motion refiled on April 3, 2014 and set a briefing schedule with respect to same. (*See* Letter Order of 4/3/2014; Docket Entry No. 73). The Court now addresses the substance of Plaintiff's motion to amend.

## II.   Analysis

### A.   Standard of Review

According to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally granted liberally. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, the Court may deny a motion to amend where there is "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182. Nevertheless, where there is an absence of the above factors: undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be granted freely. *Long v. Wilson*, 393 F.3d 393, 400 (3d Cir. 2004).

### B.   Discussion

As noted above, Plaintiff seeks leave to file a Second Amended Verified Complaint in order to redefine the RICO enterprise to include Septicleanse, add jurisdictional allegations as to Defendant Bradley A. Markin, add four counts against Bradley A. Markin and make the nationwide service provisions of the civil RICO statute applicable to the other individual Defendants.

The three main arguments asserted by Defendants in opposition to Plaintiff's motion to amend are that (1) Plaintiff should be judicially estopped from asserting that Septicleanse is now part of the RICO enterprise; (2) even if Plaintiff is permitted to include Septicleanse as a member of the RICO enterprise, Plaintiff's proposed RICO claim still fails as a matter of law and is

therefore futile; and (3) the proposed individual claims against Bradley A. Markin are futile. The Court, therefore, focuses on these three issues.

### 1. Judicial Estoppel

Judicial estoppel represents one sanction a court has "inherent equitable authority" to impose when it believes a party has engaged in malfeasance. *Montrose Medical Group Participating Savings Plan v. Bulger* 243 F.3d 773, 779 (3d Cir. 2001). "[J]udicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." (*Id*.) In order for judicial estoppel to apply, three requirements must be met:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." Finally a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct."

*Id*. at 779-80 (internal citations omitted).

Here, there is no question that Plaintiff has taken two positions that are irreconcilably inconsistent. During the November 29, 2012 OTSC hearing, the District Court specifically asked Plaintiff, "are you alleging that Septicleanse, itself, is one of the participants in the RICO claim?" and Plaintiff responded, "No, your Honor." (11/29/2012 Tr. 12:13-16; Docket Entry No. 51). The District Court then confirmed that Plaintiff was not alleging that Septicleanse was an actual participant in the RICO enterprise: "The Court has asked counsel directly and counsel has indicated that its's not contending that Septicleanse is one of the participants." (*Id*. at 13:4-6). Plaintiff now seeks to amend its Complaint to allege that Septicleanse is a participant in the RICO enterprise. Obviously, there is no reconciling these different positions.

The Court, however, is not convinced that Plaintiff has changed its position in bad faith. Parties often times take conflicting positions within the same litigation. For example, "'[c]ourts have recognized the permissibility of alternative pleading and inconsistent claims.'" *Overton v. Sanofi-Aventis, U.S., LLC*, Civil Action No. 13-5535 (PGS), 2014 WL 5410653, * (D.N.J. Oct. 23, 2014) (quoting Me*yers v. Heffernan*, 740 F.Supp.2d 637, 657 (D.Del. 2010)). While the District Court obviously relied upon Plaintiff's representations concerning Septicleanse's involvement, or more appropriately lack of involvement, in the RICO enterprise during the November 29, 2012 OTSC hearing, the Court finds that permitting Plaintiff to change course now will not provide it with an "'*unfair* advantage.'" *Montrose*, 243 F.3d at 781 (quoting *Ryan Operations G.P. v. Santiam-Midwest LumberCo.*, 81 F.3d 355, 362 (3d Cir. 1996)).

Despite the age of this case, it still remains in its infancy. The only discovery to have taken place is the limited jurisdictional discovery the District Court ordered with respect to Septicleanse. No substantive fact discovery has begun; written discovery of this type has yet to be propounded and no depositions have taken place. Indeed, no discovery schedule has been entered in this matter. Given the early stage of proceedings, Plaintiff's change in position, while dramatic, will neither result in undue prejudice to Defendants nor provide Plaintiff with an "unfair advantage." *Montrose*, 243 F.3d at 781. This is true despite the fact that Plaintiff could have asserted that Septicleanse was part of the RICO enterprise in its original Complaint and failed to do so. *See Leased Optical Depts. v. Opti-Center, Inc.*, 120 F.R.D. 476, 479 (D.N.J. 1988) (refusing to find that party's delay in alleging claim of which it had prior knowledge amounted to bad faith).

More importantly, under the circumstances presented here, the Court finds that Plaintiff's change in position is not indicative of an intention to play fast and loose with the Court. As

already noted, Plaintiff's decision to now seek to include Septicleanse as a participant in the

RICO enterprise is a considerable reversal in position.  Nevertheless, in light of the stage of

proceedings, the Court finds that the change does not "assault[] the dignity or authority of the

court."  *Montrose*, 243 F.3d at 781.  As such, the Court finds that Plaintiff's change in position

was not made in bad faith.  Consequently, the requirements of judicial estoppel have not been

met and that equitable principle cannot properly be used to prevent Plaintiff from amending the

Complaint to assert that Septicleanse is part of the RICO enterprise.

### 2.  Futility

A motion to amend is properly denied where the proposed amendment is futile. *See*

*Foman,* 371 U.S. at 182; *Alvin*, 227 F.3d at 121. An amendment is futile if it "is frivolous or

advances a claim or defense that is legally insufficient on its face."  *Harrison Beverage Co. v.*

*Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations

omitted).  To determine whether an amendment is "insufficient on its face," the Court employs

the motion to dismiss standard under FED.R.CIV.P. ("Rule") 12(b)(6) (*see Alvin*, 227 F.3d at 121)

and examines only the pleading, exhibits attached to the pleading, matters of public record, and

undisputedly authentic documents if the party's claims are based upon same.  *See Pension*

*Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the

Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in

favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the

plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.

2008).  "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as

true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its

face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, \*2

(D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,

167 L.Ed.2d 929 (2007)).  Put simply, the alleged facts must be sufficient to "allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Although a pleading does not need to contain "detailed factual allegations," a party's

"obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"

*Twombly*, 550 U.S. at 555 (citation omitted).  Thus, the "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Id*.  Additionally, in assessing a motion to

dismiss, although the Court must view the factual allegations contained in the pleading at issue as

true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or

legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d

Cir. 2007).  Further, where the proposed amendments sound in fraud, like Plaintiff's amendments

involving its civil RICO claim, Plaintiff's allegations must meet the heightened pleading standards

set forth in Rule 9(b).

### a.   Plaintiff's Proposed Allegation that Septicleanse is a Member of the Rico Enterprise

In the First Count of the proposed Second Amended Verified Complaint, Plaintiff seeks

to assert a RICO claim against all Defendants, including Septicleanse, for their participation in a

RICO enterprise through a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(c),

(d). Section 1962(c) makes it unlawful "for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity." Section 1962(d) makes it unlawful "for any person to conspire to violate" § 1962(c).

In order to state a viable RICO claim under § 1962(c), "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (internal quotation mark and citations omitted). "Person" is defined to include "any individual or entity capable of holding a legal or beneficial interest in property" (18 U.S.C § 1961(3)); "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (18 U.S.C. § 1961(4)); and "pattern of racketeering activity" as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]" 18 U.S.C. § 1961(5).

In addition, a plaintiff asserting an "association-in-fact" enterprise, such as Plaintiff here, must meet a distinctiveness requirement. As the Supreme Court has recognized, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). As a result, "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient. Instead, a viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'" *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 268 (3d Cir. 1995). Thus while "alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement" because

"[a] corporation is an entity legally distinct from its officers or employees[,]" where a party also seeks to hold a corporation liable under § 1962(c), the party must allege and establish that the corporation "engages in racketeering activity as a 'person' in another distinct 'enterprise,' since only 'persons' are liable for violating § 1962(c)." *Id.* (citing *Petro-Tech, Inc. v. Western Co. of North Am.*, 824 F.2d 1349, 1358 (3d Cir. 1987)).  The fact that a corporation is unable to operate except through its officers only poses a problem to § 1962(c) civil RICO suits "when the corporation is the named defendant—when it is both the 'person' and the 'enterprise.'" *Jaguar Cars*, 46 F.3d at 269 (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992)).

In its proposed Second Amended Verified Complaint, Plaintiff names, among others, both the officers/directors of Septicleanse as participants in the RICO enterprise as well as Septicleanse, itself, as a participant in the RICO enterprise.  Given the inclusion of Septicleanse as an actual participant, Plaintiff attempts to plead an enterprise that is distinct from Septicleanse itself.  According to Plaintiff, the enterprise at issue in this matter comprises:

      a.     Septicleanse;

      b.     Markin, Markin Sr. and Multz, who are directors and/or officers of Septicleanse;

      c.     Garcia, who registers, develops and operates the marketing and sham review websites used by the Enterprise and posts its fictitious reviews, and is not an officer, director or employee of Septicleanse; and

      d.     The operators of the Google, Yahoo and Bing search engines, who are not defendants in this action.

(Proposed Second Amended Verified Compl. ¶ 16; Docket Entry No. 60-2).  The Court is not convinced that Plaintiff has met the distinctiveness requirement as to Septeicleanse.

Plaintiff's overview of Defendants' alleged mail fraud marketing activities provides that:

15. Defendant Septicleanse and the individual defendants, acting in concert, via marketing and fictitious review websites as their primary instrumentality, utilizing Google, Yahoo and Bing search engines operated by innocent participants with which Septicleanse contracted (defendants together with the operators of said search engines comprising an association constituting the unlawful "Enterprise"), use interactive product marketing websites with fictitious derogatory reviews of competing septic system chemical products abetted by fictitious derogatory "product review" websites, which together disparage competing products, namely those of plaintiff and its legitimate competitors, causing them to have suffered and continue to suffer substantial losses of sales and profits. These websites also include fictitious favorable reviews of the Septicleanse products.

…

17. As part of defendants' marketing scheme, the Enterprise uses search engine techniques which elevate the fictitious product review websites to top search engine results positions. Those "product review" websites, which elevate the Septicleanse products and derogate competing products, are designed to mislead consumers searching the Internet for reliable information about septic system chemicals. The fictitious reviews are intended to, and do decrease the sales of plaintiffs and their legitimate competitors and thus increase defendants' sales.

18. Defendants' search engine techniques for the Enterprise include the purchase of advertisements using the trademarks and trade names of plaintiff and its legitimate competitors as key words on various search engines including Google, Yahoo and Bing; and implanting those trademarks and trade names as metadata in defendants' websites. As a result, when a consumer conducts Internet research for plaintiff's trademarks such as NEWTECHBIO or NT-MAX or SEPTI-BLAST on a search engine, defendants' advertisements and websites are displayed ahead of plaintiff's advertisements and website.

(*Id*. ¶¶ 15, 17-18). Similarly, through its RICO statement, Plaintiff further describes the structure, purpose, function and course of conduct of the RICO enterprise, which Plaintiff refers to as the "Septicleanse Enterprise":

Septicleanse is a corporation through which septic product orders are received and filled, and payment is collected and distributed directly or indirectly to the individual defendants. Purportedly independent review websites are set up and maintained by Garcia who has no connection with Septicleanse except as a participant in the enterprise.  Multz and Markin Sr. participate in the filling of orders and help manage the enterprise.

Markin is the ringleader and mastermind who at times directs the duties of the other defendants and places orders for paid advertisements with the operators of the Google, Yahoo and Bing search engines.  Markin selects products to advertise online and discusses the fraudulent objectives of such advertising, including product reviews, with other defendants who knowingly and willingly participate in the unlawful acts of the enterprise.

For example, Markin solicited Garcia and Markin Sr. to register websites for use in defendants' fraudulent marketing of septic products.  Garcia and Markin Sr. willingly agreed to register certain review websites which were used to host fictitious reviews denigrating plaintiff's products and those of legitimate competitors.

The purpose of the enterprise is to enrich the individual defendants by consumer deception.

The function of the enterprise is to make money by deceiving consumers into purchasing Septicleanse products rather than those of competitors, using fake reviews, reports of nonexistent tests, and fictitious expert articles published on the Internet.

The course of conduct of the enterprise comprises establishment of anonymous review websites and marketing websites, links from the former to the latter that a consumer can click on, purchase of paid search engine results page advertisements using (among others) trademarks and trade names of competitors, and creation of fictitious product reviews on the review websites to promote enterprise products while derogating competing products; coupled with derogatory language in some paid advertisements that come up when consumers search using a competitor's trademark or trade name.

(Pl. RICO Statement at 50-51; Docket Entry No. 68).

Based on the allegations set forth in Plaintiff's proposed Second Amended Verified

Complaint as well as on the supplemental information contained in Plaintiff's RICO statement,

the Court fails to see how there is any distinction between Septicleanse and the Septicleanse

Enterprise.  The actions undertaken by the individual Defendants appear to correlate with

commercial activities that fall within the normal scope of Septicleanse's business operations.

*See Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, Civil Action No. 09-3761 (JAP), 2011 WL

2489954, *6 (D.N.J. June 20, 2011) (noting that "[f]acts describing the 'ordinary operation of . . .

garden-variety' business relationships are not sufficient to state a RICO claim." (quoting

*Crichton v. Golden Rule Ins. Co.,*  576 F.3d 392, 400 (7th Cir. 2009)).

This is true despite Plaintiff's inclusion of Ms. Garcia as a member of the enterprise.

While Plaintiff alleges that Ms. Garcia "has no connection with Septicleanse except as a

participant in the enterprise" (Pl. Rico Statement at 50), the only allegations proffered with

respect to Ms. Garcia, if taken as true, establish that she was working as an agent of Septicleanse.

According to Plaintiff, Ms. Garcia:  (1) "registers, develops and operates the marketing and sham

review websites used by the Enterprise and posts its fictitious reviews" (Proposed Second

Amended Verified Compl. ¶16(b)); (2) "registers and maintains the marketing and sham review

websites used by the Enterprise and posts its fictitious reviews" (*Id*. ¶76); and (3) "set up and

maintained" "[p]urportedly independent review websites" (Pl. RICO Statement at 50).  On their

face, when taken as true, the only reasonable inference to be drawn from these allegations is that

Ms. Garcia working as an agent of Septicleanse undertaking the ordinary business operations of

Septicleanse.  As a result, the Court finds that Plaintiff's allegations with respect to Ms. Garcia

fail to establish an enterprise distinct from Septicleanse, itself.  (Docket Entry No.76).[1]

---

[1] Curiously, Plaintiff seeks to have the Court give some weight to Ms. Garcia's certification in which she swears under oath that she has taken no action in furtherance of Septicleanse's business.  Apparently, Plaintiff believes that this certification lends some credence to its argument that Ms. Garcia is not an agent of Septicleanse.  That certainly represents one way to view the certification.  Another, however, would be that Plaintiff's allegations concerning Ms. Garcia are false.  At this stage, however, the Court is required to accept Plaintiff's factual allegations as set forth in the proposed pleading as true.  As a result, the Court declines to

Further, the inclusion of the "innocent operators" in Plaintiff's proposed Second Amended Verified Complaint, *i.e.*, the operators of Google, Yahoo and Bing, who are identified as members of the association-in-fact- enterprise, but not named as defendants, does not cure the lack of distinctiveness described above.  Plaintiff provides the Court with no law to support a conclusion otherwise.

Consequently, the Court finds that Plaintiff's proposed allegations asserting that Septicleanse is a participant in the RICO enterprise are futile because the distinctiveness requirement of RICO has not been met.  In light of this determination, Plaintiff's proposed allegations reasserting claims against the individual Defendants will also be futile based on this Court's lack of jurisdiction over said Defendants, unless the Court determines that Plaintiff's proposed allegations sufficiently establish personal jurisdiction over Bradley A. Markin, which would in turn provide jurisdiction over the other individual Defendants based on RICO's nationwide service provisions.  This issue is discussed below.

### b.  Plaintiff's Proposed Individual Claims Against Bradley A. Markin

In light of the Court's determination that Plaintiff's proposed addition of Septicleanse as a member of the RICO enterprise would be futile, in order for Plaintiff's claims against any of the individual Defendants to survive, including Plaintiff's proposed new claims against Bradley A. Markin, the Court must find that Plaintiff's allegations concerning Bradley A. Markin are sufficient to establish the Court's personal jurisdiction over him.  Such a determination would also make the nationwide service provisions of the civil RICO statute applicable to the other

---

consider Ms. Garcia's certification as it is not part of Plaintiff's proposed Second Amended Verified Complaint.

individual Defendants.  The Court, however, is not satisfied that that is the case.  Instead, the

allegations concerning Bradley A. Markin in the proposed Second Amended Verified Complaint

are essentially the same as those already considered by the District Court and twice rejected.

(*See* 11/292012 Tr. 12:18-25 to 13:1-6; Docket Entry No.51;1/14/2013 Tr. 5:6-25 to 6:1-16;

Docket Entry No. 52).

　　　　None of the allegations contained in the proposed Second Amended Verified Complaint

establish that Bradley A. Markin has had the personal contacts with New Jersey necessary for

there to be personal jurisdiction over him.  Instead, the allegations against Bradley A. Markin as

asserted in the Second Amended Verified Complaint all appear to refer to actions taken by him

in his role as an employee, officer and/or shareholder of Septicleanse.  (*See* Proposed Second

Amended Compl. ¶¶60-73; Docket Entry No. 60-2).  This is insufficient.

　　　　As the District Court already stated:

> Plaintiff's amended complaint, including the additional
> claims lodged against Bradley Markin in his individual capacity,
> fails to allege any new factual basis for the Court to exercise
> personal jurisdiction over him (and, in turn, the other individual
> defendants).  All of the additional factual allegations put forth by
> plaintiff are directly divined from Bradley Markin's role as a
> principal of Septicleanse.  The amended complaint is devoid of any
> new or additional information which indicates any individual
> connection between Bradley Markin and New Jersey divorced
> from his role of overseeing Septicleanse's internet marketing.  This
> role, as known by plaintiff, was previously considered by the Court
> and was found to be an improper ground for the Court to exercise
> personal jurisdiction over Bradley Markin individually.
> 　　The amended complaint, therefore, is just a repled version
> of plaintiff's original verified complaint which has been updated to
> include information already considered and rejected.  As such, the
> amended complaint contains no new information and is duplicative
> of the claims previously dismissed.

(1/14/2013 Tr. 5:17-25 to 6:1-11; Docket Entry No. 52).  The same appears to be true with

respect to the allegations contained in Plaintiff's proposed Second Amended Verified Complaint.

As a result, the Court finds that the proposed amendments with respect to Bradley A. Markin

would be futile. The Court denies Plaintiff's motion to make said amendments for this reason.

## III. Conclusion

For the reasons stated above, Plaintiff's motion seeking leave to file a Second Amended

Verified Complaint is DENIED. An appropriate Order follows.


Dated: November 24, 2014


s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

17